# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Case No. 4:21 CR 425 RWS (DDN)** |
| | ) |
| **JEFFREY REUTER,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Government's Motions for Pretrial Detention. (ECF Nos. 8 & 21). The Court held a detention hearing on July 29, 2021, and took the matter under submission. (ECF No. 24). After considering all of the evidence in this case, the Government's motions for pretrial detention are GRANTED.

## FACTUAL FINDINGS

Mr. Reuter is charged with being in possession of a firearm while subject to a court order of protection. (ECF No. 18). The Government seeks pretrial detention pursuant to 18 U.S.C. §§ 3141-3142 of the Bail Reform Act. The Government alleges Mr. Reuter poses a serious risk of flight and a danger to the community.

The United States Pretrial Services Office prepared a Bail Report for the Court's consideration. (ECF No. 17). The Court adopts the factual statements in the Bail Report as part of the record for the detention issue. The Bail Report notes Mr. Reuter is 52 years old. He was born in St. Louis, attended college and dental school out of town, and returned to St. Louis in 1995 and has resided here since that time. Mr. Reuter attended Villanova University and earned a degree in biology. He attended dental school at Northwestern University. If released, he would

live at his parents' lake house in St. Francois County, Missouri. He did not advise the Pretrial

Services Office of any major medical problems. Mr. Reuter drank alcohol in the past, but states

he quit drinking two years ago. He has no history of substance abuse. He has no felony

convictions.

Mr. Reuter was sued for dissolution of marriage in 2013. Case No. 13SL-DR01400. On

December 9, 2013, St. Louis County Judge J.B. held Mr. Reuter in contempt of court for failing

to pay court ordered child support. Mr. Reuter was arrested and held in jail overnight, and the

judgment of contempt was quickly purged. The couple settled their dissolution case in May of

2014.

In December of 2016, Mr. Reuter filed a federal civil lawsuit against St. Louis County

and Judge J.B. for violating his civil rights by having him arrested for contempt of court. In his

complaint, he states that he billed St. Louis County $15,000,000 for the incident, and with

accrued interest, he was owed $18,288,302.86. He also sought lost wages of $2,400,000 to cover

the income he would not earn because he quit practicing dentistry in November 2016, until his

planned retirement at age 65 in 2033. His complaint also contained the following statement:

> The damages that were incurred as a result of this unlawful arrest warrant and the
> damages that were incurred from the blatant disregard that government entities showed
> toward my grievance are psychological and can be summed up as follows.  Prior to the
> unlawful arrest warrant, I was not a gun owner ... never was. Now I am an owner of three.
> There is never a time that I travel in my truck without a gun in my possession. I am never
> far from a gun while inside my house. Though the element of danger from the public
> exists, that is not what I fear. The danger that exists is the St. Louis County government.
> Specifically, the threats to me are judges who can sign arrest warrants indiscriminately
> and a government which has proven to be unwilling to protect my civil rights. Post
> Traumatic Stress Disorder and Pain and Suffering are the damages that I claim. These
> events have changed me. Those responsible must be made to answer.

(ECF No. 30-1, at 4). The federal civil case was dismissed because Judge J.B. has immunity for acts taken in his judicial capacity, nor was the County liable. The dismissal was affirmed on appeal.

On January 5, 2017, Mr. Reuter filed a pro se motion to modify the judgment of dissolution and the parenting plan. On January 18, his ex-wife filed a request for a temporary restraining order ("TRO") against Mr. Reuter alleging his increasingly erratic, delusional and dysfunctional behavior. The TRO was granted and scheduled for a hearing on January 24. On January 23, the Presiding Judge of the St. Louis County Circuit Court entered an order requiring Mr. Reuter to be escorted at all times while he was inside the courthouse. (ECF No. 30-2). The Presiding Judge noted the allegations that Mr. Reuter has acted in a threatening and harassing manner since the entry of the judgment of dissolution and that his child reported Mr. Reuter possesses guns to use "when the bad Judge comes" and "to shoot the Judge." *Id.* at 1.

The January 24 hearing was continued a number of times, and the case was reassigned to Judge M.G. On October 4, 2017, Judge M.G. denied Mr. Reuter's motion to dissolve the TRO and granted a new TRO which restrained him from exercising custody and/or visitation awarded him in the original judgment and parenting plan. (ECF No. 30-3). Judge M.G. noted the ex-wife was afraid of Mr. Reuter and concerned for the welfare of their child if he were granted unsupervised visits. She testified to a history of domestic violence with Mr. Reuter. *Id.* at 3. She had seen his "mental health and stability deteriorate and his anger and aggression worsen significantly." *Id.* His ex-wife produced hostile, threatening and insulting text messages and emails, including one with the statement, "And multiple people (including yourself) are responsible. Pay back is imminent . . . stay tuned." *Id.* at 4. Another stated their daughter "WILL know that people who have fucked with me will be destroyed." *Id.* Judge M.G. observed Mr.

Reuter closed his dental practice in November of 2016 to pursue "justice," and lost his home with significant equity after he failed to pay the County property taxes for three years and stopped making monthly mortgage payments. *Id.*

Mr. Reuter's daughter repeated statements that the purpose of his guns was to protect him from the "bad judges." (ECF No. 30-3, at 7). The Order also notes on January 15, 2017, Mr. Reuter frantically attempted to contact his ex-wife because he feared one of his guns may have fallen into the child's backpack, but fortunately, it had not. *Id.* His ex-wife feared he would flee with their daughter. *Id.* at 8. His ex-wife believed Mr. Reuter was "unable to control his anger, is obstinate, and will not comply with Court orders or take 'no' for an answer." *Id. at 8.* Judge M.G. shared the concern that Mr. Reuter would not abide by court orders and noted his refusal to participate in supervised visits with his daughter. *Id.* at 8-9. Judge M.G. noted Mr. Reuter used his dental DEA license to prescribe and administer antibiotics to the child without consulting a physician, or his ex-wife, who had the authority to make medical decisions under the dissolution order and parenting plan. All of this could put the child at risk of physical harm. *Id. at 9-10.*

Dr. James Reid is a clinical psychologist who performed an evaluation of Mr. Reuter during the dissolution case. Dr. Reid substantiates the ex-wife's concerns regarding Mr. Reuter's mental health. He diagnosed Mr. Reuter with unspecified personality disorder with narcissistic features and alcohol abuse, if not dependence. Dr. Reid was unable to complete a home visit because he was forwarded an email from Mr. Reuter indicating that anyone who entered his property would be shot. (ECF No. 30-3, at 10-11).

Judge M.G. also noted Mr. Reuter testified he gave his guns to his father; however, the judge found this claim had no evidentiary support and was not credible. He also moved outside of the metropolitan St. Louis area without giving notice. Judge M.G. found very serious concerns

with Mr. Reuter's mental health, his failure to complete required treatment, his threatening and irrational behavior, all of which precluded Mr.  Reuter from having unsupervised visitation with his daughter. *Id*. at 12. She also found his "unabashed hatred of [his ex-wife] and the threats he has made against her put her at risk of physical and emotional harm and immediate relief is required to ensure her safety and the safety of the minor child." *Id*. Mr. Reuter was only granted visitation supervised by the Domestic Relations Services; otherwise, he was required to stay at least 500 feet away from his ex-wife and daughter. *Id.* at 13.

Mr. Reuter's motion to modify the dissolution decree and his ex-wife's cross motion to modify were scheduled for a two-day trial on December 12 & 13, 2017. On December 12, his ex-wife and the guardian ad litem ("GAL") appeared in court; however, Mr. Reuter failed to appear. (ECF No. 30-4). He later alleged that he did not appear because he feared he would be arrested. (ECF No. 7, at 17).

Mr. Reuter was again held in contempt of court for numerous acts, including "[s]talking, threatening, and disturbing the peace of [his ex-wife]." (ECF No. 30-4, at 4). Judge M.G. found Mr. Reuter divested himself of his home and either forfeited the equity or secreted away the equity proceeds. *Id.* at 6-7. The judge also found he had over $230,000 in known, but undisclosed assets. *Id.* at 7-8. Judge M.G. found Mr. Reuter "intentionally and willfully failed to disclose these assets in an attempt to avoid his financial obligations to [his ex-wife] pursuant to the Judgment," and "deliberately, knowingly, and purposefully misrepresented his assets in an attempt to impede the collection of child support and falsely bolster his stance that he does not have the ability to pay child support." *Id.* at 8.

On October 31, 2017, Mr. Reuter prepared a card for his daughter which ended with the phrase, "I promise we'll be together soon."[1] (ECF No. 30-4, at 11). Judge M.G. found the ex-wife credibly testified that she understood this line to be a veiled threat that Mr. Reuter would either abscond with the child, or harm or kill the ex-wife so he could be with their daughter. *Id.* at 11-1. In March of 2019, the dissolution case was reassigned to Judge J.G.

On November 2, 2017, the ex-wife filed a petition for an order of protection against Mr. Reuter. Case No. 17SL-PN05581. The court issued an ex parte order on the same date. A hearing on the petition was scheduled for December 13, 2017. Mr. Reuter was served with notice of the petition and the hearing date. Mr. Reuter failed to appear in court for the hearing, and a full order of protection was entered against him. (ECF No. 2-1) The Full Order of Protection states the ex-wife proved allegations of domestic violence, stalking, and/or sexual assault against Mr. Reuter. *Id.* at 1. The court found Mr. Reuter represents a credible threat to the safety of the ex-wife. *Id.* at 2. The order prohibited Mr. Reuter from going to the ex-wife's place of employment, their daughter's school, and also required him to stay at least 1,000 feet away from his ex-wife. *Id.* The order prohibited Mr. Reuter from possessing any firearms. *Id.* at 5. The Full Order of Protection was effective until December 12, 2018, and would renew automatically until December 12, 2019, unless Mr. Reuter requested a hearing. *Id.* Mr. Reuter did not request any hearings in this matter.

Nearly two years later, on December 7, 2019, Mr. Reuter personally appeared at the homes of Judges J.B., M.G., and J.G. Mr. Reuter rang the doorbell at each home and attempted to give a "Demand Notice" to each of the three judges. Mr. Reuter did not meet any of the judges

---

[1] His ex-wife testified Mr. Reuter personally delivered the card. (ECF No. 30-4, at 11). However, Mr. Reuter's mother claims to have delivered the card. (ECF No. 31-6).

face-to-face, but he delivered the Demand Notice to one judge's spouse, and left copies for the other two judges. Each judge testified that Mr. Reuter kept one hand in his jacket pocket at all times. Each believed Mr. Reuter had a firearm in that pocket.

The Demand Notice stated Mr. Reuter has exhausted "all avenues of civil dispute resolution." (ECF No. 7, at 1). He demanded a total of $2,500,000 from the three judges; he required all judgments and orders related to him since 2012 be vacated, and to remove all of these cases from Casenet; he wanted Judge J.G. to command the ex-wife to relinquish custody of their daughter to him every weekend and on all holidays; and demanded Judges J.B. and M.G. to write letters of apologies to his daughter. *Id.* at 1-2. The judges were given until the end of 2019 to make "full satisfaction of these demands," or the judges would be "deemed non-compliant." *Id.* at 2. The Demand Notice included the statements, "Be advised . . . immunity is not available to you this go-round." "Any governmental communication or action directed towards Reuter, . . . will indicate your unwillingness to comply and will signal a forfeiture of the grace period." *Id.* He attached a pleading and exhibits to the Demand Notice which noted his disputes with at least three other judges in St. Louis County. *Id.* at 4-22.

On December 10, 2019, Mr. Reuter was charged with three felony counts of Tampering with a Judicial Officer. Case No. 19SL-CR07249. On December 11, the police located Mr. Reuter at a residence owned by his parents in Bonne Terre, Missouri. (ECF No. 2, at 5). Mr. Reuter refused to exit the residence and was in a three-hour standoff with the police. The officers learned Mr. Reuter possessed a firearm during the standoff. After his arrest, the officers returned to the residence and recovered the firearm. *Id.* at 5. The Government reports Mr. Reuter made threatening statements to the officers that he would harm anyone who entered his home. (ECF

7

No. 30, at 3-4). In addition to the firearm, the officers recovered two magazines loaded with hollow point ammunition. *Id.* at 4.

The officers also located a set of handwritten notes which describe an organization in which Mr. Reuter is the leader. He planned to have three team leaders, six surveillance men and six executioners. (ECF No. 30-6, at 4). This organization would meet in hidden locations which would change after each meeting. They would never communicate by phone; they would avoid cameras and search for listening devices at every meeting. *Id.* Under a section entitled "enforcement," the note listed the following:

-entire body concealed
-gloves
-no DNA exchanged
-no prints
-disguise vehicles
          -removable stripes, etc.
          -license plate swap
          -new vehicle paper license

*Id.*

This organization planned to demand cash payments to be delivered in brown boxes sealed with duct tape. *Id.* at 2. It described the use of surveillance, enforcement and protection teams. *Id.* at 5. The handwritten notes stated, "judges need to fear for their safety." *Id.* at 6. A message to police chiefs included the following:

. . . You will let this go. The cleanse has begun and will be finished. If you choose to take action in this matter, you will have chosen to be our enemy and actions to eliminate you will be taken.

*Id.*

The handwritten notes listed a "To Do" list which included getting the names and addresses of Missouri bar members, and to obtain "uniforms/weapons/bags to dispose." *Id.* at 9.

The last page provides an address with notes regarding a residence in St. Louis County which the Government states was the home of one of the three victim judges. *Id.* at 11.

Mr. Reuter was held in state custody since December 11, 2019, with either no bond, or a very high cash-only bond. Multiple state court orders found Mr. Reuter's confinement was necessary to secure the safety of the community, the victims and other persons. (ECF No. 30-7, 30-8, 30-9, 30-10). The state court noted on September 11, 2020, and April 14, 2021, that Mr. Reuter failed to cooperate in his mental examination which resulted in the examiner's inability to complete the evaluation; however, the examiner "made indication of mental disease or defects and/or mental incompetency to proceed." (ECF No. 30-9, 30-10). While in custody, he filed pleadings which admitted his delivery of the Demand Notices to the three judges, and he claimed the prior court orders in St. Louis County were unjust and unlawful. (ECF No. 30-5 at 1, 5). He also attached an exhibit with information relevant to his disputes with additional St. Louis County judges. *Id.* at 6-8. On July 23, 2021, Mr. Reuter was released from state custody with a number of strict conditions of release, including wearing a GPS monitoring device, having no contact with the victims, his ex-wife or his daughter, and not to possess any weapons. (ECF No. 30-11).

Once released from state custody, Mr. Reuter was immediately arrested on his federal warrant. The Government moved for detention, and a detention hearing was held on July 29, 2021. At the detention hearing four witnesses testified on behalf of the Government.

Judge J.B. testified Mr. Reuter failed to comply with a court order regarding the payment of child support, and he was held in contempt. He described Mr. Reuter appearing at his home delivering the Demand Notice which contained threats and demands. Judge J.B. believed Mr. Reuter very clearly had a firearm in his pocket. He kept the same hand in his pocket the entire

time he was at the judge's home. Judge J.B.'s wife answered the door and received the notice. He still believes Mr. Reuter would be a danger to the community, his ex-wife, his daughter, Judge J.B. and other judges. Judge J.B. testified the only reason he is alive today is because he was not present on the day Mr. Reuter appeared at his home.

Judge M.G. provided a summary of the dissolution and protective orders noted above. Judge M.G. testified Mr. Reuter intentionally failed to comply with court orders in the state cases resulting in contempt citations, and he failed to appear in court for trial. The judge noted threats Mr. Reuter made to his prior attorney, the GAL, and the psychiatrist. Judge M.G. believed Mr. Reuter is a danger to his ex-wife, his daughter, judges, and himself. Judge M.G. described Mr. Reuter's appearance at the front door to her home with one hand in his pocket at all times. She believed he possessed a firearm. He delivered the written threat noted above. Judge M.G. believed if his demands were not met, she would be killed.

Judge J.G. also testified at the detention hearing. Judge J.G. took over Mr. Reuter's dissolution case, but he had no personal interaction with him during the case. He only signed a payout order for child support. He testified Mr. Reuter arrived at the judge's home, even though his home is on a rural plot of land, with a 700-foot driveway, and is difficult to locate online. Judge J.G. testified he was at home with his wife and son when Mr. Reuter arrived at his front door. Judge J.G. did not answer the door because he had received a telephone call from Judge M.G. warning him that Mr. Reuter had appeared at her home. The judge put his wife and son in a back bedroom, and then he was able to see the driveway by looking through a bay window. He saw Mr. Reuter arrive. Mr. Reuter again kept one hand in his pocket while he rang the doorbell and knocked on the door. Judge J.G. then went to the foyer area of his home and waited to see if Mr. Reuter would force his way into the home. Judge J.G. was fearful on that day in 2019 and

10

would remain fearful if Mr. Reuter were released on bond. Judge J.G. believes Mr. Reuter will pose a threat to the community, to the judges and others if he were released on bond.

Mr. Reuter's ex-wife also testified at the detention hearing. The ex-wife noted prior incidents of physical, emotional and verbal abuse during their marriage. She testified Mr. Reuter demonstrated signs of a declining mental state in 2013. The ex-wife sought and received orders of protection; however, Mr. Reuter did not abide by the orders of protection. She described one instance in which Mr. Reuter took their ten-month old for an overnight visit. The baby was breastfeeding. The ex-wife made arrangements to feed the baby if the baby would not take in the breastmilk she provided through a sippy cup or bottle. The baby would not drink from the sippy cup or bottle. However, Mr. Reuter kept the baby for three days even though the baby was not taking in fluids.

During the next few years, Mr. Reuter continued to stalk, harass, and threaten his ex-wife over emails and text messages, and would come by her home. She relayed her daughter's statements that Mr. Reuter would put the bad judges away, put them in the dungeon, and shoot the bad judges. The four-year-old described multiple firearms and how to load them. The child also said, "I'm going to shoot your mother," and when asked, she said her father had made that statement. After that incident, an order was entered prohibiting custodial visitation with Mr. Reuter. The ex-wife also testified regarding the card which was placed on her door with a threatening note from Mr. Reuter. She also testified as to the incident when Mr. Reuter believed his gun might be inside their daughter's bag.

The ex-wife believes Mr. Reuter would not follow any court order prohibiting him from contacting her or her daughter. She is afraid of Mr. Reuter. She has lived through eight years of litigation with spiraling destructive behaviors, more and more irrational thinking, and a worsening pattern of threats and volitivity. The ex-wife believes Mr. Reuter would cut off his

11

ankle bracelet, shoot her, take the child, and flee, or he would kill all of them in a murder-suicide. In the alternative, he would just flee. He will not go back to jail. She noted his failure to appear at trial to fight to see his daughter and later filed memos claiming he was afraid if he went to court, he would have gone to jail. Mr. Reuter sent her texts and emails stating he would not stop until he was behind bars.

## DISCUSSION

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception . . . The [Bail Reform] Act authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

A defendant may be detained before trial "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance . . ." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (emphasis original; quoting *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003), and *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc)).

The Government requests Mr. Reuter's detention under the Bail Reform Act, 18 U.S.C. §§ 3141-3142. As Mr. Reuter is charged with a felony offense involving the possession of a firearm, the Government's motion is proper under § 3142(f)(1)(E). The Court is required to consider a number of factors to decide if the Government's motion for detention should be granted.

**(g) Factors to be considered.—**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . .

§ 3142(g).

Mr. Reuter is charged with a felony firearms violation. The Government alleges he was arrested after a three-hour standoff with law enforcement during which he told the officers he intended to exercise his Second Amendment rights and would defend himself. He later told the officers he possessed a 9mm handgun and would have harmed anyone who entered his home. The officers then recovered the 9mm handgun and two magazines loaded with hollow point ammunition. Mr. Reuter was under a full order of protection at the time he possessed the firearm. The weight of the evidence against Mr. Reuter is strong.

Mr. Reuter is also awaiting trial for three counts of Tampering with a Judicial Officer for appearing at the residences of three state court judges and delivering Demand Notices requiring

payment of $2,500,000, removal of all court cases related to him, regular custody with his daughter, and two judicial letters of apology. (ECF No. 7). If he did not receive "full satisfaction of these demands," by the end of the year, the judges would be "deemed non-compliant." *Id.* at 2. The notice warned, "Be advised . . . immunity is not available to you this go-round." "Any governmental communication or action directed towards Reuter, . . . will indicate your unwillingness to comply and will signal a forfeiture of the grace period." *Id.* Each of the three judges testified they believed he held a gun in his jacket pocket while he was at their homes. Mr. Reuter's pending charges are very serious, involve a firearm, and threats of violence.

Considering Mr. Reuter's personal character, the Court sees two different men. Eight years ago, Mr. Reuter was a well-educated person who attended excellent universities, practiced as a dentist, and lived in a nice home, with strong family and community ties. He has some history with alcohol use, but no history of illegal drug use. He has no felony convictions and was not on probation or parole at the time of the instant offense.

Today he is a different man. He is unemployed and voluntarily quit practicing dentistry. He lost his home, in which he had considerable equity, because he refused to pay his County property taxes and quit paying the mortgage. He proposes he could live in his parents' lake house, but without their assistance, he would be homeless. Mr. Reuter is now divorced; he has lost all contact with his daughter; he refused to participate in supervised visitation when that was allowed; and he failed to appear in court for the trial he requested to modify the terms of his divorce settlement.

His attorney blames his use of alcohol to account for his mistakes; however, Mr. Reuter states he quit using alcohol two years ago. All of the pending charges occurred within the past two years. While he was in state custody, and not drinking alcohol, he failed to cooperate with

his mental health examination and filed pro se pleadings rationalizing his conduct against the judges. The mental health examiner and his ex-wife both believe he is suffering from a mental health problem. His ex-wife described Mr. Reuter as a man with spiraling destructive behaviors, more and more irrational thinking, and a worsening pattern of threats and volitivity.

The Demand Notices Mr. Reuter delivered to the judges were threatening and made outrageous demands which appeared to flow from a troubled mind. The handwritten notes found by the officers after Mr. Reuter's arrest are even more troubling. He planned to lead a group of individuals, including surveillance men and executioners, to demand large cash payments from people. His organization would meet in secret, avoid being detected over telephones, surveillance cameras, DNA or fingerprints. They would disguise their vehicles, and acquire uniforms, weapons and disposal bags. Judges needed "to fear for their safety," and police chiefs would be warned that "the cleanse has begun and will be finished." (ECF No. 30-6, at 6). If the chiefs took any actions in this matter, "actions to eliminate [them] will be taken." *Id.*

Defense counsel argues the handwritten notes obtained after his arrest were unlawfully seized. However, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." § 3142(f). These notes do not assist the Government in proving Mr. Reuter is guilty of the instant offense, but they are very relevant to the issue of "the nature and seriousness of the danger to any person or the community that would be posed by [Mr. Reuter's] release." § 3142(g). In *United States v. Taylor*, 289 F. Supp.3d 55, 70 (2018), the Court held "the Bail Reform Act permits consideration of evidence suppressed for purposes of trial when assessing 'the nature and seriousness of the danger' to the community that would be posed by the defendant's pretrial release."

After considering all of the factual findings, the Court finds by clear and convincing evidence that Mr. Reuter poses a serious risk of danger to his ex-wife, his daughter, the three judges who received the demand notice, as well as other judges, and the community at large.

The Government argues Mr. Reuter is a serious risk of flight. Mr. Reuter's ex-wife testified he would likely flee, and possibly kidnap his daughter before leaving. Mr. Reuter failed to appear in court for the trial related to his own motion to modify the dissolution decree and parenting plan. He states he failed to appear because he was afraid of being arrested at court. He also failed to appear at the Order of Protection hearing the next day. When the police arrived at his home in December of 2019, he refused to comply and was in a three-hour armed standoff with the officers. He owns no property in this district. The location of the equity left over after the foreclosure of his home is unknown. The Court finds by a preponderance of the evidence that there is a serious risk Mr. Reuter would flee and not appear as required.

Finally, the Court must determine whether any conditions or combination of conditions of release would reasonably assure the safety of others in the community and his appearance as required. Mr. Reuter has been held in contempt of court for multiple violations of state court orders. He testified he had given his firearms to his father, but the state court found this statement to lack credibility. While Mr. Reuter's actions over the past several years may be influenced by mental illness, he has twice refused to cooperate with court-ordered mental health examinations. There is no record of him completing any mental health counseling or treatment.

Mr. Reuter has demonstrated his disdain for the judicial process both in court and by appearing at the homes of three state court judges with a list of outrageous demands and threats. Even conditions such as home incarceration would not reasonably assure the Court that Mr. Reuter would comply with any conditions. If Mr. Reuter wore a GPS location monitoring device

while living in St. Francois County, the Court believes he could cut off the location monitoring device and flee. While the Pretrial Services Office would be notified if he removed the device, Mr. Reuter would have at least an hour head start to flee.

The Court has carefully considered the Government's motions for detention and the Defendant's memorandum in opposition. The Court finds by a preponderance of the evidence there are no conditions or combination of conditions of release which will reasonably assure Mr. Reuter will appear as required. The Court also finds by clear and convincing evidence there are no conditions or combination of conditions of release which will reasonably assure the safety of any other person and the community.

**IT IS HEREBY ORDERED** the Government's Motions for Pretrial Detention are GRANTED. Mr. Reuter is therefore DETAINED pending a final adjudication of this case.

**IT IS FURTHER ORDERED**, pursuant to 18 U.S.C. § 3142(h)(i), Mr. Reuter is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; Mr. Reuter shall be afforded a reasonable opportunity for private consultation with counsel; and, on order of a court of the United States or on a request of an attorney for the Government, the person in charge of the corrections facility in which Mr. Reuter is confined shall deliver him to a United States marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS FINALLY ORDERED** that Mr. Reuter is remanded into the custody of the United

States Marshal.


                                                    */s/ Stephen R. Welby*                                                                    
                                                    STEPHEN R. WELBY
                                                    UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of August, 2021.