IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CR-425 RWS-DDN |
| | ) | |
| JEFFREY DAVID REUTER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT AND TO SUPPRESS EVIDENCE AND STATEMENTS**

NOW COMES Defendant Dr. JEFFREY REUTER,  by and through his counsel, Assistant Federal Public Defender Mohammed G. Ahmed, moving this Honorable Court to dismiss the Indictment against him pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). In the alternative, Dr. Reuter moves this Court to suppress evidence of a firearm recovered from his residence in contravention of the Fourth Amendment of the United States Constitution and statements he made to police while in custody yet without being given *Miranda* warnings.

Defendant is charged with a single count of violating 18 U.S.C. § 922(g)(8) by being in possession of a firearm on December 11, 2019 and some "unknown period of time" preceding that date while under an order of protection. Section 922(g)(8) prohibits the receipt or possession of a firearm or ammunition by a person who is subject to a court order that restrains the person from harassing, stalking, or threatening an intimate partner or child of such intimate partner.

As an initial matter, the Indictment states on its face the essential elements of a § 922(g)(8) offense. Ordinarily, such an indictment is not assailable with a pretrial motion to dismiss. However, "when certain dispositive facts are undisputed, a court may consider that evidence and entertain a pretrial motion to dismiss." *United States v. Marrowbone*, 102 F. Supp. 3d 1101, 1105 (D.S.D. 2015). This is such a case. Because the Government has not and will not be able to adduce actual evidence that Dr. Reuter possessed a firearm while subject to a domestic violence court order, the Indictment fails as a matter of law and this case should be dismissed. But should the Court decline to dismiss the Indictment, it should nonetheless go on to find that the firearm recovered and the statements Dr. Reuter gave while not Mirandized yet in custody, should be suppressed.

## FACTS

On December 11, 2019, St. Louis County police illegally entered the residence of Dr. Reuter at 94XX Lakeview Drive, Bonne Terre, Missouri, 63628 and allegedly recovered a firearm. Police were looking for Dr. Reuter because several days earlier, he left a letter styled a "Demand Notice" requesting various forms of injunctive relief and monetary damages at the residences of three St. Louis County judges he believed had treated him illegally and unfairly in a years-long, highly contested divorce proceeding. Dr. Reuter did not threaten the judges nor any person he encountered that day. He never displayed a firearm to anyone. The judges were not the subjects of any restraining order against Dr. Reuter at the time either.

2

Several years earlier, Dr. Reuter's ex-wife initiated a divorce action in St. Louis County. The proceedings were tumultuous. Unfortunately, throughout the course of that proceeding, Dr. Reuter's ex-wife made generalized accusations against him and secured rulings based upon those generalized accusations. The order of protection at issue in this case is an example of the sham due process of law to which Dr. Reuter was subjected. At one point Dr. Reuter was even jailed for two days for violating an order that he had in fact complied with. Dr. Reuter was directed to pay money by a certain deadline, and he did what he was ordered to do. Despite that, he was nevertheless wrongfully jailed for failing to make the payment.

On November 2, 2017, Dr. Reuter's ex-wife petitioned the St. Louis County Court to grant an ex-parte order of protection. The Court set November 30, 2017, for a hearing on the petition. Dr. Reuter was served a copy of the ex-parte order in person on November 6, 2017. The next day, November 7, 2017, the hearing on the order of protection was rescheduled to December 13, 2017 at 5:00pm. On December 13, 2017, the Court entered a full order of protection against Dr. Reuter. There is no record this order was ever served upon Dr. Reuter.

Almost two years later, on December 7, 2019, Dr. Reuter went to the residences of three judges he identified as subjecting him to unfair and illegal treatment and left letters requesting various forms of injunctive relief and monetary damages. Dr. Reuter did not encounter any of the judges, nor did he harm or threaten anyone, brandish a weapon, or vandalize any property. In fact, Dr.

3

Reuter encountered the spouse of one of the judges and did nothing to her beyond handing her the letter and asking her to give it to her spouse. One of the judges was not home at the time Dr. Reuter delivered the letter; she was notified of the delivery by a doorbell camera. The third judge did not answer his door when Dr. Reuter knocked and later discovered the letter on the front windshield of his car.

Police were notified and they secured an arrest warrant for Dr. Reuter. They did not secure a search warrant. In the afternoon of December 11, 2019, police located Dr. Reuter at his residence at 94XX Lakeview Drive, Bonne Terre, Missouri, 63628 in St. Francois County. After a non-violent standoff, Dr. Reuter exited his home, locked his door, stepped away from the house towards police, and was arrested for allegedly Tampering with Judicial Officers.

David Reuter, Dr. Reuter's father, came to the scene of the arrest. David Reuter owned the home in which Dr. Reuter had been residing; the police were already aware that Dr. Reuter's parents owned two homes, one at 59XX Oakville Woods Place, St. Louis, Missouri 63129 (the house in which they resided), and the lake house at 94XX Lakeview Drive, where Dr. Reuter resided. Despite having already accomplished their objective of arresting Dr. Reuter, St. Louis police over-reached and pressured David Reuter into allowing them into Dr. Reuter's residence to search the premises. Despite knowing full well that Dr. Reuter was the sole resident of the premises, police made no attempt to secure his permission to search.

4

Moreover, police were allegedly in the process of applying for a search warrant but did not have any such warrant to enter the premises at 94XX Lakeview Drive.

Immediately after arresting and cuffing Dr. Reuter, Detective White placed him in a police vehicle and began driving to the St. Louis County jail. As they drove, Detective White spoke to Reuter, who allegedly made an incriminating statement. There is no indication that any officer had advised Dr. Reuter of his right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

## ARGUMENT

I.   **The Order Of Protection At Issue In This Case Expired Before December 11, 2019 And Thus Cannot Serve As A Basis For Dr. Reuter's Alleged Violation Of 18 U.S.C. § 922(g)(8).**

The full order of protection that serves as a basis for the Indictment is attached to this motion as Exhibit A. It says that:

> This Judgment shall be effective until Dec. 12, 2018 unless sooner terminated or extended by this court.
>
> This court finds that it is in the parties' best interests that this Order shall automatically renew after one year, making this Order <u>effective until Dec. 11, 2019</u> unless the Respondent requests a hearing by 30 days prior to the expiration. (Note: this provision only applies to full orders of protection that have a duration of one year.)

Ex. A at p. 5. By its own terms then, the order of protection expired at 11:59 P.M. on December 10, 2019.

The order of protection was issued by a state court and is governed by Missouri law. Missouri Rev. Stat. § 1.090 provides: "Words and phrases shall be

5

taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." Accordingly, "[sa] word not defined in a statute is given its ordinary meaning pursuant to the dictionary." *Gross v. Parson*, 624 S.W.3d 877, 884–85 (Mo. 2021) (citing *Bus. Aviation, LLC v. Dir. of Revenue*, 579 S.W.3d 212, 218 (Mo. banc 2019)). Merriam-Websters defines "until" as "up to the time that, up to such time as."

This clearly means the order of protection lasted <u>until</u> December 11, 2019, which means it expired before December 11, 2019; that is, the order expired at 11:59 P.M. on December 10, 2019. The authorities illegally entered Dr. Reuter's residence and recovered a firearm in the afternoon of December 11, 2019. At that time, Dr. Reuter was no longer under any order of protection, and thus, there is no basis for Dr. Reuter's prosecution under 18 U.S.C. § 922(g)(8).

## II.  The Government Has No Evidence That Dr. Reuter Possessed A Firearm During Some "Unknown Period Of Time" Predating December 11, 2019.

Next, the Government states in the Indictment that Dr. Reuter possessed a firearm for some unknown period of time before December 11, 2019. The Indictment reads: "Beginning at a time unknown and continuing through December 10, 2019, and ending on or about December 11, 2019," Dr. Reuter possessed a firearm. However, the Government has not produced in discovery any actual evidence of

such possession. Instead, it relies on innuendo, uncorroborated statements of Dr. Reuter in court filings, and the absence of proof of dispossession to infer possession.

After reviewing the discovery provided by the Government in this case, it appears the Government will try to produce the following evidence to support its allegation that Dr. Reuter possessed a firearm for some unknown period of time before December 11, 2019. First, it will show Dr. Reuter purchased the firearm at issue in 2014. Second, it will point to a <u>December 2016</u> court filing where Reuter sued St. Louis County and a St. Louis County judge and stated

> Prior to the unlawful arrest warrant, I was not a gun owner ... never was. Now I am an owner of three. There is never a time that I travel in my truck without a gun in my possession. I am never far from a gun while inside my house. Though the element of danger from the public exists, that is not what I fear. The danger that exists is the St. Louis County government.

Doc. 1 at ¶ 23, Complaint, *Jeffrey Reuter v. John N. Borbonus, et. al.*, No. 4:16-cv-2126-SLNJ.

Third, it will point to proposed amended pleading where Dr. Reuter stated substantially the same sentiments. Doc. 22-1 at ¶ 28. Proposed Amended Complaint, No. 4:16-cv-2126-SLNJ. This filing also predates the order of protection by several months.

Fourth, the Government will try to assert that after his ex-wife filed for an order of protection (that was ultimately nullified), Dr. Reuter purported in court on September 8, 2019 that he gave his firearm to his father but that police asked his

father later in December of 2019 if that were the case and his father said Dr. Reuter had not given him any guns.

Fifth, the Government will produce video that shows Dr. Reuter had his hand in his pocket on December 7, 2019 while he delivered his demand letters to the judges' residences.

None of the Government's evidence is sufficient to prove Dr. Reuter's possession of a firearm during a "time unknown and continuing through December 10, 2019," as alleged in the Indictment. Let us dispense with the fiction of "a time unknown." The only relevant time period at issue is during the term of the order of protection. That term lasted two years from the day it was secured until its expiration on December 10, 2019. For that reason, all of the Government's purported evidence outside that time period is irrelevant.

Moreover, Dr. Reuter's uncorroborated statements in court filings are also insufficient to find he possessed a firearm. Even if Dr. Reuter had written in a court filing during the term of the order of protection that he was in possession of a firearm at that time, such a statement would not be sufficient to prove he actually possessed a firearm. That is so because a defendant's admission alone does not establish the existence of a crime, it can only be used to corroborate guilt once a crime has been established. *Smith v. United States*, 348 U.S. 147, 154 (1954). "The rule that an uncorroborated confession cannot, on its own, support a criminal conviction has its roots in a healthy skepticism of the accuracy of confessions. A long

8

history of judicial experience has shown that, under the 'strain of suspicion,' individual self-interest, enmity, or personal frailty 'may tinge or warp' the substance of a confession." *United States v. Kirk*, 528 F.3d 1102, 1111 (8th Cir. 2008) (citing *United States v. Stabler*, 490 F.2d 345, 350 (8th Cir. 1974)).

The Government will not produce a single piece of evidence or testimony from anyone that Dr. Reuter possessed a firearm during the pendency of the order of protection. At best, the Government may prove it recovered a firearm from Dr. Reuter's residence the day after the order of protection lapsed and that he bought it in 2014. That is it. The Government has nothing remotely probative on the location of the recovered firearm or whether Dr. Reuter possessed the recovered firearm during the term of the order of protection at issue in this case.

For these reasons, the Indictment should be dismissed.

## III. The Government Has No Evidence That Dr. Reuter Knew Of His Prohibited Status.

In 2019, the United States Supreme Court held that to prosecute someone for violating 18 U.S.C. § 922 (g), the Government must prove that the defendant knew of his restricted status. *Rehaif v. United States*, —— U.S. ——, 139 S. Ct. 2191; *see United States v. Sholley-Gonzalez*, 996 F.3d 887, 890 (8th Cir. 2021). For Dr. Reuter, this means the Government must show in this matter that he knew he was under an order of protection. The Government cannot establish this because it cannot show that Dr. Reuter was ever made aware of the December 17, 2017 full order of protection.

9

**IV.    Should The Court Decline To Dismiss The Indictment, It Should Nonetheless Suppress The Recovered Firearm As It Was Obtained By The Government In Contravention Of The Fourth Amendment.**

On December 11, 2019, St. Louis County police sought to arrest Dr. Reuter pursuant to an arrest warrant. After Dr. Reuter exited his home and locked his door, police arrested him. Police then entered Dr. Reuter's home without his consent, without a search warrant, and without any legally cognizable exception to the Fourth Amendment of the United States Constitution. Police knew Dr. Reuter was the sole resident of the home. Yet police ostensibly asked David Reuter, the owner of the residence, if he would consent to the search. David Reuter apparently gave permission for the police to enter and search the premises.  Inside, they claim to have found a 9mm Heckler & Koch firearm that is the firearm at issue in this case and other materials. Because the firearm was obtained by police in an unlawful manner it should be suppressed. The other materials are not at issue in this case.

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. CONST. amend. IV. When a search or seizure is conducted without a warrant, the Government must establish, by a preponderance of the evidence, that it did not violate the Fourth Amendment. *See United States v. Valencia*, 24 F.3d 1106, 1108 (9th Cir. 1994). Evidence resulting from an unconstitutional search or seizure cannot be admitted as proof against the victim of

10

the search, and therefore must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

A consent search is valid if permission to search is obtained from a third party who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected. *United States v. Matlock*, 415 U.S. 164, 171 (1974). "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Id*. at 171 n. 7.

"A tenant in the ordinary course does not take rented premises subject to any formal or informal agreement that the landlord may let visitors into the dwelling . . . . In these circumstances, neither state-law property rights, nor common contractual arrangements, nor any other source points to a common understanding of authority to admit third parties generally without the consent of a person occupying the premises." *Georgia v. Randolph*, 547 U.S. 103, 112 (2006). An overnight guest also has a legitimate expectation of privacy in his host's home. *Minnesota v. Olson*, 495 U.S. 91, 98 (1990).

11

The facts in this case resemble the facts in *Chapman v. United States*, 365 U.S. 610 (1961), where the Supreme Court held that police officers' search of rented premises without a warrant, in the absence of the tenant but with the consent of the landlord, was unlawful, and the evidence seized during such search was inadmissible. In *Chapman*, the owner of a rental property visited the property, noticed the smell of alcohol, and called the police. 365 U.S. at 611. Police came and the owner gave permission for them to search the premises, where they found illegal alcohol. *Id*. Chapman, the tenant, came home and was arrested for operating an illegal distillery. *Id*. at 612. The Court found the warrantless search unlawful and noted that no exigency existed: "No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction." *Id*. at 615.

Here, police first asked Dr. Reuter to exit his residence, and he refused. Two officers left the scene to apply for a search warrant. Before they returned, Dr. Reuter voluntarily exited the house, locked the door behind him, and surrendered to police, who immediately arrested him, handcuffed him, and transported him away from the scene.  Only then did they seek David Reuter's consent to search the residence. Police knew Dr. Reuter was the sole occupant and residence of the home, yet they never asked him if they could search his home. Instead, they escorted Dr. Reuter off the property in handcuffs and asked Dr. Reuter's father for consent to search. The police knew that David Reuter did not live at 94XX Lakeview because

12

he wrote a different address as his residence on the consent to search form. There were no indicia that David Reuter and Dr. Reuter enjoyed mutual common authority over the premises.

Dr. Reuter had already demonstrated his lack of consent for anyone to enter his house by locking the door behind him when he exited to surrender to police. No exigency existed; as in *Chapman*, the search was of a permanent, immobile dwelling, no evidence or contraband was threatened with destruction or removal, and Dr. Reuter had already been arrested, preventing his flight. Under these circumstances, the warrantless search of Dr. Reuter's residence was in blatant disregard of Dr. Reuter's Fourth Amendment rights, and all evidence resulting from that search must be suppressed.

## V.   The Government Violated Dr. Reuter's Fifth Amendment Right When It Elicited Incriminating Statements From Him After Taking Him Into Custody But Before Mirandizing Him.

Immediately after arresting and cuffing Dr. Reuter, Detective White placed him in a police vehicle and began driving to the St. Louis County jail. As they drove, Detective White spoke to Dr. Reuter, who allegedly made an incriminating statement. There is no indication that any officer had advised Dr. Reuter of his right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda* requires that law enforcement officers must "advise a suspect of his fifth and sixth amendment rights prior to a custodial interrogation." *United States v. Richmann*, 860 F.2d 837, 840 (8th Cir. 1988). A custodial interrogation is

13

"'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Id.* (quoting *Miranda*, 384 U.S. at 444). Dr. Reuter had been arrested and was handcuffed in a police vehicle and engaged in an exchange with Detective White when he made the alleged statement. As such, the use of the statement in evidence violates Dr. Reuter's Fifth Amendment protection against self-incrimination and must be suppressed. Any evidence deriving from the statement is also fruit from the poisonous tree and must be suppressed. *Wong Sun*, 371 U.S. 471 (1963).

Dated: October 20, 2021

Respectfully submitted,

/s/ *Mohammed G. Ahmed*
MOHAMMED G. AHMED
Assistant Federal Public Defender
Bar No. 6285612 IL
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Mohammed_Ahmed@fd.org
ATTORNEY FOR DEFENDANT

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2021, the foregoing was filed with the Court's CM/ECF system to be served upon all attorneys of record for the United States Government.

<u>/s/ *Mohammed G. Ahmed*</u>
MOHAMMED G. AHMED
Assistant Federal Public Defender