UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 4:21-CR-0425 RWS DDN |
| | ) | |
| JEFFREY REUTER, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND SUPPRESS EVIDENCE AND STATEMENTS**

COMES NOW the United States of America, and for its Response in Opposition to Defendant's Motion Dismiss the Indictment [Doc. 44], states as follows:

## I.      INTRODUCTION

On July 28, 2021, a Federal Grand Jury returned an indictment charging defendant Jeffrey Reuter ("the Defendant") with one count of being in possession of a firearm while subject to a court order that restrained him from harassing, stalking, or threatening an intimate partner, in violation of Title 18, United States Code, Section 922(g)(8). Doc. 18. On October 20, 2021, the Defendant filed with the Court a Motion to Dismiss the Indictment and to Suppress Evidence and Statements. Doc. 26.

In his motion, the Defendant seeks to dismiss the indictment alleging that the court order to which the Defendant was subject expired prior to December 11, 2019, that the United States "has no evidence" that the Defendant possessed a firearm prior to December 11, 2019, and that the United States "has no evidence" that the Defendant knew of his prohibited status. The Defendant

also argues that the firearm seized by law enforcement was seized in violation of the Fourth Amendment, claiming the consent law enforcement obtained to search the residence in which the firearm was found was improper. Finally, the Defendant argues that the statements the Defendant made to law enforcement following his arrest were in violation of the Fifth Amendment.

The Defendant's motion is without merit and should be denied.

## II.    THE DEFENDANT IS NOT ENTITLED TO A PRE-TRIAL DETERMINATION OF THE SUFFICIENCY OF THE UNITED STATES' EVIDENCE

The Defendant moves for dismissal of the indictment based upon the argument the Defendant believes the United States has insufficient evidence to prove the charge against the Defendant. This argument must fail.

The Rules of Federal Criminal Procedure do not allow for pre-trial determination of the sufficiency of the United States' evidence. *United States v. Ferro,* 252 F.3d 964, 968 (8th Cir. 2001). Thus, a motion to dismiss an indictment must fail if it is based on arguments questioning the United States' ability to prove the elements of a charge at trial. *United States v. Hirsch*, 360 F.3d 860, 863 (8th Cir. 2004).

An indictment is sufficient if: (1) it contains all the essential elements of the offense charged; (2) it fairly informs the defendant of the charges against which he must defend; and (3) it alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. *United States v. Fleming,* 8 F.3d 1264, 1265 (8th Cir.1993). "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Sewell,* 513 F.3d 820, 821 (8th Cir.2008). An indictment is insufficient if it is "so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *Fleming,* 8 F.3d at 1265. Challenging an indictment is not a means of testing the

strength or weakness of the government's case, or the sufficiency of the government's evidence. *United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir. 1994). Rather, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id. See also United States v. Sampson,* 371 U.S. 75, 78–79 (1962) (holding that the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense).

In this case, the language of Count One tracks the language of Title 18, United States Code, Section 922(g)(8). The indictment contains the essential elements of the offense charge, fairly informs the Defendant of the charge against which he must defend and alleges sufficient information to allow the Defendant to avoid jeopardy concerns. The Defendant does not allege that the indictment itself is insufficient, rather, the Defendant's arguments are directly challenging the sufficiency of the evidence, which cannot be decided at this stage. *United States v. Ferro,* 252 F.3d 964, 967–68 (8th Cir. 2001); *United States v. Perez,* 575 F.3d 164, 166–67 (2d Cir. 2009). Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington,* 395 U.S. 57 (1969); *see also United States v. Knox,* 396 U.S. 77, 83, 83 n. 7, (1969). If contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 does not authorize its disposition before trial.

The facts proposed by the Defendant in his motion are contested facts and the United States objects to any consideration of facts outside the indictment. *See*

*United States v. Hall,* 20 F.3d 1084, 1088 (10th Cir.1994) (holding courts may entertain motions to dismiss that require consider facts outside the indictment and bearing on the general issue in the "limited circumstances" where "[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts," and [3] the district court can determine from them that, "*as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt.").

A court may not "approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be." *Ferro*, 252 F.3d at 968; *United States v. Williams*, No. 07-739, 2008 WL 11417373, *2 (E.D.Mo. Aug. 19, 2008) (Fleissig, Mag. J.) ("an indictment is not subject to a motion to dismiss based on allegations of the insufficiency of the government's evidence"). While "[a] court may make preliminary findings of fact necessary to decide the legal questions presented by [a motion to dismiss], the court may not invade the province of the ultimate finder of fact." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (quotations omitted); *see also*, *United States v. Hirsch*, 360 F.3d 860, 863 (8th Cir. 2004) (citing *United States v. Robbins*, 997 F.2d 390, 395 (8th Cir. 1993)). For these reasons, a motion to dismiss must fail to the extent it is based on arguments questioning the Government's ability to prove the elements of a charge at trial. *Hirsch,* 360 F.3d at 863. However, that is precisely what Defendant argues in his motion.

Here, whether the United States has sufficient evidence to support a conviction for the Defendant's possession of a firearm while knowingly subject to a court order that restrained him from harassing, stalking, or threatening an intimate partner is an issue for trial. The Defendant is not entitled to a pre-trial evaluation of the United States' evidence, and his motion should be denied for that reason.

## II.    FACTS REGARDING THE DEFENDANT'S MOTION TO DISMISS EVIDENCE AND STATEMENTS

On December 10, 2019, a criminal complaint was filed against the Defendant in the Twenty-First Judicial Circuit of Missouri, charging the Defendant with three counts of Tampering with a Judicial Officer, in violation of Missouri Revised Statutes Section 579.095. On that same date, an arrest warrant was issued for the Defendant relative to the complaint. The complaint was charged based on conduct occurring on December 7, 2019, when the Defendant personally delivered a document entitled "Demand Notice" to the personal residences of three Twenty-First Judicial Circuit judges. In that document, the Defendant made specific demands of three Twenty-First Judicial Circuit judges and that failure to satisfy his demands would "compel" the Defendant "to take pre-emptive, defensive measures." Surveillance video from the judges' homes, coupled with previous court filings in which the Defendant indicated he was always armed, led law enforcement to believe that the Defendant was and would be armed.

Saint Louis County Police Department ("SLCPD") officers identified two properties owned by the Defendant's parents. One property was located in Saint Louis County, the other property was located in Bonne Terre, Missouri. Based on statements the Defendant had made during court proceedings, SLCPD officers believed that the Defendant was located at the property in Bonne Terre, Missouri, located at 9461 Lakeview Drive, Bonne Terre, Missouri (hereinafter "the residence"). Officers also determined the Defendant owned a black 2013 Ford F150 truck.

On December 11, 2019, SLCPD officers went to the residence in an effort to locate and arrest the Defendant. Upon arrival to the residence, officers observed the Defendant's Ford F150 truck parked in the driveway. An officer knocked on the door of the residence. The Defendant did not open the door, but spoke with the officer through the door, confirming his identity. The

Defendant was told, several times, that the officers had a warrant for the Defendant's arrest. The Defendant refused to come out of the residence and told officers "If you come in to arrest me, I will take that as a sign of aggression and will be forced to defend myself." Concerned for officer safety, the officers retreated from the front door of the residence. Some officers took cover behind police vehicles, others surrounded avenues of exit from the residence. SLCPD officers then requested assistance from the St. Francois County Sheriff's Department, which sent additional law enforcement personnel to the residence.

After approximately one hour, an SLCPD crisis negotiation officer made contact with the Defendant via cellular phone. For over an hour, the Defendant spoke via cellular phone and text message with the officer. Law enforcement perceived the Defendant as extremely angry during these interactions. The Defendant told the officer that if the police came into the residence to arrest him, "it's the police's decision and anything that happens from that decision is the fault of the police."

Law enforcement contacted the Defendant's parents, David and Jane Reuter. An officer advised Ms. Reuter of the situation and requested assistance in getting the Defendant to surrender to law enforcement. Ms. Reuter spoke to the Defendant using the speaker function on the officer's cellular phone. During the conversation between the Defendant and Ms. Reuter, the Defendant made many statements, including "I am exercising my Second Amendment rights, right now!" Concerned that the Defendant was not going to surrender peacefully, an SLCPD officer and a St. Francois County deputy sheriff left the scene and drove to the St. Francois County Prosecuting Attorney's Office to apply for a search warrant for the residence. Shortly thereafter, the Defendant was advised that law enforcement may take the Defendant into custody using a "tactical response."

Less than thirty minutes later, the Defendant exited the residence and was arrested.

The Defendant was placed in an SLCPD vehicle and transported to the St. Louis County Jail. The Defendant was accompanied by SLCPD officers White, Machens, and Meadows, who did not advise the Defendant of his *Miranda* rights. The detectives did not interrogate the Defendant, rather, they thanked him for peacefully surrendering and engaged in casual conversation about dentistry and football. During this conversation, the Defendant asked the detectives if they would have entered the residence if he had not surrendered. The detectives responded affirmatively, at which point the Defendant stated he was glad the detectives did not enter the residence, because the Defendant was armed with a 9mm firearm. The Defendant further stated that he had removed the magazine from the firearm prior to exiting the residence. The detectives did not ask any follow-up questions about the Defendant's statements.

After the Defendant had already been transported from the residence, the Defendant's father, David Reuter, arrived at the residence. David Reuter was advised that the Defendant had already been arrested and was being transported to the St. Louis County Jail. David Reuter referred to the residence as his house. SLCPD officers Walsh and Koester asked David Reuter if would consent to SLCPD officers searching the residence and David Reuter verbally agreed. When the officers and David Reuter approached the front door of the residence, David Reuter produced keys to unlock the front door; however, the front door was already unlocked. David Reuter and the officers entered the residence where David Reuter signed an SLCPD Consent to Search form. SLCPD officers searched the residence and located a Heckler and Koch P30 9mm firearm and two firearm magazines in a bedroom in the residence. A subsequent trace of the firearm by the Bureau of Alcohol, Tobacco, Firearms, and Explosives revealed that the Defendant purchased the firearm

on December 31, 2014.

### III. THE FIREARM LAW ENFORCMENT SEIZED WAS LEGALLY OBTAINED AND SHOULD NOT BE SUPPRESSED

#### A. The Recovered Firearm Was Obtained Following a Valid Third-Party Consent to Search the Residence.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. CONST. AMEND. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Consent searches are one of these established and well-delineated exceptions. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 231-232 (1973) ("Consent searches are part of the standard investigatory techniques of law enforcement agencies" and are "a constitutionally permissible and wholly legitimate aspect of effective police activity.") Further, a warrantless consent search is reasonable and consistent with the Fourth Amendment, regardless of the availability of a warrant. *Fernandez v. California*, 571 U.S. 292, 307 (2014).

"Common authority over or other sufficient relationship to the premises or effects sought to be inspected" may give rise to a third party's valid consent to search. *United States v. Matlock*, 415 U.S. 164, 171 (1974). "Common authority is a function of mutual use, joint access, and control," *United States v. Janis*, 387 F.3d 682, 686 (8th Cir. 2004) (citation omitted), but it in no way requires a property interest in the area to be searched. *See United States v. Nichols*, 574 F.3d 633, 636 (8th Cir. 2009).

Even absent actual authority, however, a third-party can have apparent authority to consent to a search if law enforcement reasonably believes the person possesses authority to consent.

*Illinois v. Rodriguez*, 497 U.S. 177, 188-189 (1990). *See also Georgia v. Randolph*, 547 U.S. 103 (2006); *United States v. Chavez Loya*, 527 F.3d 546 (8th Cir. 2008). "Apparent authority exists when 'the facts available to the officer at the moment [of the search] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises.'" *United States v. Lindsey*, 702 F.3d 1092, 1096 (8th Cir. 2013) (citation omitted). Significantly, this Court has disclaimed the need for "police to go behind appearances to verify third party authority," opting for a "more liberal" approach. *See, e.g.*, *United States v. Almeida-Perez*, 549 F.3d 1162, 1171 (8th Cir. 2008) (collecting cases). This Court and others have found that permission to access premises and containers confers at least apparent authority, even absent "mutual use" and "joint control for most purposes." *See United States v. Baswell*, 792 F.2d 755 (8th Cir. 1986); *United States v. Davis*, 967 F.2d 84, 87 (2d Cir. 1992) (collecting cases holding that "third-party consent to a search will validate the search if . . . the third party had access to the area searched, and . . . permission to gain access."); *United States v. Perez*, 948 F. Supp. 1191, 1200–01 (S.D.N.Y. 1996) ("[P]ermission to gain access to the bedroom, as well as the closed containers therein . . . confers on the third party the authority to consent to a search . . . [of] the closed containers.").

This liberal approach is particularly clear in *United States v. Baswell*, in which the court determined the caretaker of a vacation home had authority to consent to a search of the vacation home. 792 F.2d 755 (8th Cir. 1986). In *Baswell*, the owner of a vacation home gave the Defendant a key and free access to the vacation home. *Id*. at 756. The owner also gave a key to and paid a caretaker to "look after" the vacation home. *Id*. at 757. The court held the caretaker had an agency relationship with the vacation homeowner and had implied authority to consent to the entry of the vacation home. *Id*. at 759.

The Defendant argues that *Chapman v. United States* is controlling authority. 365 U.S. 610 (1961). However, the present case is not akin to landlord-tenant cases like *Chapman* or hotel clerk cases, like *Stoner v. California*. 376 U.S. 483 (1964). *Chapman*, decided before *Matlock* and *Rodriguez*, dealt with a basic landlord-tenant relationship in which the defendant leased a room in a dwelling house. *Id*. at 611. The owner, after smelling possible whiskey mash, contacted law enforcement, who arrived and smelled possible whiskey mash. *Id*. at 612. After finding the doors and all but one window locked, the owner gave permission to law enforcement to climb into an unlocked window to further investigate. *Id*. The government presented no evidence that there was a contract permitting the landlord to forcibly enter the house. *Id*. at 616. *Stoner*, also decided long before *Matlock* and *Rodriguez*, made clear that a hotel clerk does not have authority to consent to a search of an occupied hotel room. 376 U.S. at 488.

In the present case, David Reuter, the Defendant's father, owned the residence as a vacation home. At the time SLCPD officers went to the residence, they knew that the Defendant had access to the residence and was likely staying there with his parents' permission. They had no information that the Defendant was tenant or lessee. David Reuter, upon his arrival at the residence, referred to the residence as his house and was in possession of keys to the residence. David Reuter is not a landlord without express permission to forcibly enter the home of his tenant, nor is he a hotel clerk with no relationship to the property being searched. Rather, David Reuter is the Defendant's father, owned the residence, and was merely giving the Defendant permission to reside at the residence.

The United States does not dispute that David Reuter was not a co-occupant of the residence that law enforcement was aware that he was not a co-occupant. However, co-occupancy is not the only way one can have common authority over or other sufficient relationship to the

premises. David Reuter's relationship to the residence makes clear that he had authority to consent to the search. However, even if the Court finds David Reuter did not have actual authority to consent to the search based on the information law enforcement had, they reasonably believed David Reuter had authority to consent to a search of the residence.

The Defendant also argues that the Defendant objected to any consent to search the residence by "locking the door behind him when he exited to surrender to police." Doc. 44, p. 13. First, there is no evidence that the Defendant locked the door behind him. Second, even if law enforcement officers had asked the Defendant to consent to a search and he had expressly objected, once the Defendant was removed from the premises, law enforcement could ask another individual with authority to consent to a search of the residence. *See Fernandez*, 571 U.S. 292.

### B. Even If David Reuter's Third-Party Consent is Not Valid, the Recovered Firearm Is Admissible Under the Inevitable Discovery Doctrine

Even if this Court determined that David Reuter did not have actual or apparent authority to consent to the search of the residence, the firearm would have been obtained during the execution of a search warrant of the residence.[1]  Evidence obtained during or because of a search that violates the Fourth Amendment is inadmissible, unless an exception to the exclusionary rule permits admission of such evidence. *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012). One such exception is the doctrine of inevitable discovery. Under the inevitable discovery exception, evidence that "ultimately or inevitably would have been discovered by lawful means" need not be suppressed. *Nix v. Williams*, 467 U.S. 431, 444 (1984). For this exception to apply in the Eight Circuit, it is unclear whether the government must also show that "the government was

---

[1] It is also reasonable that the officers would have conducted a "protective sweep" of the residence, had they not obtained consent. *Maryland v. Buie*, 494 U.S. 325 (1990). The "protective sweep" would likely have uncovered the firearm.

actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Baez*, 983 F.3d 1029 (8th Cir. 2020) (citing *United States v. Conner*, 127 F.3d 663) (8th Cir. 1997) and stating the Eighth Circuit inconsistently applies either the *Nix* test or the *Conner* test and it is unclear whether *Conner* is controlling).

In the present case, regardless of whether *Conner* is controlling, it is clear the inevitable discovery doctrine applies because the firearm would have been obtained pursuant to a search warrant. To determine if evidence within the scope of a search warrant would have been obtained had a prior unlawful search not occurred, the court must examine whether "law enforcement 'would have sought a warrant even if the [unlawful] search had not occurred,' and [] 'the warrant was supported by probable cause even without information gained from the [unlawful] search.'" *Baez*, 983 F.3d at 1037 (quoting *United States v. Anguiano*, 934 F.3d 871, 874 (8th Cir. 2019)).

In this case, SLCPD officers were in the process of obtaining a search warrant from the Saint Francois County courts before the Defendant exited his residence. Had the Defendant not exited the residence, officers would have sought a search warrant, based on the arrest warrant for the Defendant and the statements he made to law enforcement during the standoff. Further, if law enforcement believed that David Reuter did not have authority to consent to a search of the house, or if David Reuter refused consent, law enforcement would have obtained a search warrant. As such, the firearm would have been discovered by lawful means and law enforcement was prepared to execute an alternative plan. *See United States v. Hammons*, 152 F.3d 1025, 1030 (8th Cir. 1998) (holding it was sufficient for officers to have in mind an alternative plan that they would have executed to satisfy any requirement that the government actively pursue a substantial line of investigation).

Based on the foregoing reasons, the Defendant's motion to suppress the firearm should be denied.

### IV.    THE DEFENDANT'S STATEMENTS TO LAW ENFORCEMENT WERE NOT THE PRODUCT OF INTERROGATION AND SHOULD NOT BE SUPPRESSED[2]

The Defendant was not subjected to interrogation in the SLCPD vehicle during transport to the St. Louis County Jail. The casual conversation in the vehicle was not the "functional equivalent" of interrogation, and there is no evidence that the officers "should have known that their conversation was reasonably likely to elicit an incriminating response" from the Defendant.

"[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response [] from the suspect." *Id*. at 301. "A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." *Id*. "But since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id*.

In *Innis*, after the defendant invoked his right to counsel, he was placed in a police vehicle

---

[2] The Defendant is currently charged in the Twenty-First Judicial Circuit of Missouri, Cause No. 19SL-CR07249-01 with three counts of Tampering with a Judicial Officer. The trial court ordered suppressed the Defendant's statements made to law enforcement while being transported to from the residence to the St. Louis County Jail. Following an interlocutory appeal, the Missouri Court of Appeals reversed the trial court's order holding that the Defendant's statements were not the product of an interrogation and were voluntarily given. *See State of Missouri v. Jeffrey Reuter*, ED109731 (2021).

for transport to the police station, and three officers rode with the suspect. 446 U.S. at 294. During the drive, one of the officers initiated a conversation with another officer about a missing shotgun that had been used in the murder. *Id*. The officer stated there were "a lot of handicapped children running around in this area," and he said, "God forbid one of them might find a weapon with shells and they might hurt themselves." *Id*. at 294-95. The defendant interrupted the conversation and stated offered to show the officers where the gun was located. *Id*. at 295.

The United States Supreme Court held that the conversation did not constitute "interrogation" for purposes of *Miranda*. *Id*. at 298-303. The Court observed that "the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Id*. at 300. The Court stated, "'[i]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id*. The Court noted that the conversation "included no express questioning" of the suspect and "was, at least in form, nothing more than a dialogue between the two officers to which no response from the respondent was invited." *Id*. The Court concluded that the conversation did not constitute "interrogation" as that term is generally understood. *See id*.

The Court further held that "it cannot be fairly concluded that the [defendant] was subjected to the 'functional equivalent' of questioning." *Id*. The Court stated, "It cannot be said, in short, that [the officers] should have known that their conversation was reasonably likely to elicit an incriminating response from the [suspect]." *Id*. The Court observed that "[t]here is nothing in the record to suggest that the officers were aware that the [suspect] was peculiarly susceptible to an appeal to his conscience concerning the safety of handicapped children" and that there was nothing

"in the record to suggest that the police knew that the [suspect] was unusually disoriented or upset at the time of his arrest." *Id*. at 302-03. The Court noted that "[t]his is not a case where the police carried on a lengthy harangue in the presence of the suspect." *Id*. at 303. The Court concluded that the suspect "was not subjected by the police to words or actions that the police should have known were reasonably likely to elicit an incriminating response from him." *Id*.

Here, while the conversation in the SLCPD vehicle included the Defendant, it cannot be fairly concluded that the Defendant was subjected to the "functional equivalent" of questioning. A casual conversation about dentistry and football is not a conversation that officers should have known was reasonably likely to cause this Defendant to inquire about a recently concluded standoff or to make statements about a firearm. There was no evidence that the officers asked any questions about the standoff, and there was no evidence that the officers had any intent to provoke the Defendant to talk about the standoff or his gun. Indeed, unlike in *Innis*, where the court acknowledged that it might be said that the conversation contained a "subtle compulsion," there was no comparable compulsion here to induce the Defendant to inquire about the standoff and to make a statement about his gun and ammunition

In addition, even if the Court determined that the officers thanking the Defendant for peacefully surrendering prompted the Defendant to ask the officers whether they would have eventually entered the residence, it cannot be fairly concluded that the officers knew that thanking the Defendant would induce him to ask about what they would have done if he had not come out and to make spontaneous statements about his gun and ammunition. As outlined above, "the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Innis*, 446

Page **15** of **16**

U.S. at 302. "Volunteered statements of any kind are not barred by the Fifth Amendment and their

admissibility is not affected by our holding today." *Id*. at 300

## V.      CONCLUSION

For the foregoing reasons, the United States of America respectfully requests that the Court

deny Defendant's Motion to Dismiss the Indictment and to Suppress Evidence and Statements.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

 /s/ Jennifer L. Szczucinski
JENNIFER L. SZCZUCINSKI, #56906MO
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200
Jennifer.Szczucinski@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2021, the foregoing was filed electronically with the
Clerk of the Court to be served by operation of the Court's electronic filing system upon all
attorneys of record for Defendant.

 /s/ Jennifer L. Szczucinski
JENNIFER L. SZCZUCINSKI, #56906MO
Assistant United States Attorney